UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OMEGA DEMOLITION CORP., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| TECHNOLOGY INSURANCE COMPANY, INC.; ) | |
| AMTRUST NORTH AMERICA, INC., AS AGENT ) | |
| AND/OR APPARENT AGENT OF TECHNOLOGY ) | |
| INSURANCE COMPANY; IMPERIUM INSURANCE ) | |
| COMPANY; AND TRISTAR RISK MANAGEMENT, ) | |
| INC., AS AGENT AND/OR APPARENT AGENT OF ) | |
| IMPERIUM INSURANCE COMPANY, ) | |
|     Defendants. ) | |

## COMPLAINT

Now comes Plaintiff OMEGA DEMOLITION CORP., by its counsel, Harvey Kruse, P.C. and Lewis, Rice & Fingersh, L.C., and for its Complaint, states:

### The Parties

1) Plaintiff OMEGA DEMOLITION CORP. ("Omega") is a corporation organized under the laws of Illinois with its principal place of business at 31W566 Spaulding Road, Elgin, Illinois 60120. Among other things, Omega engages in the business of demolition and dismantlement.

2) Defendant TECHNOLOGY INSURANCE COMPANY, INC. ("Technology") is a corporation organized under the laws of New Hampshire with its principal place of business at 59 Maiden Lane, 6th Floor, New York City, New York 10038. Among other things, Technology engages in the business of providing Worker's Compensation and Employers Liability insurance to commercial customers.

3) Defendant AMTRUST NORTH AMERICA, INC. ("Amtrust") is a corporation organized under the laws of Delaware with its principal place of business at 59 Maiden Lane, 43rd Floor,

New York City, New York 10038.  Among other things, Amtrust engages in the business of underwriting and administering claims for insurance companies and their customers.

4) Defendant IMPERIUM INSURANCE COMPANY ("Imperium") is a company organized under the laws of Delaware with its principal place of business at 800 Gessner Road, Suite 600, Houston, Texas 77024.  Among other things, Imperium engages in the business of providing Worker's Compensation and Employers Liability insurance to commercial customers.

5) Defendant TRISTAR RISK MANAGEMENT, INC. ("Tristar") is a corporation organized under the laws of California with its principal place of business at 100 Oceangate, Suite 700, Long Beach, California 90802.  Among other things, Tristar engages in the business of administering claims for insurance companies and their customers.

6) At all times relevant, Amtrust was acting as, and is named only as, an agent and/or apparent agent of Technology by administering the Claim (defined below) and/or the Lawsuit (defined below) on behalf of Technology.  Technology and Amtrust are collectively referred to as "Technology/Amtrust."  At all times relevant, Tristar was acting as, and is named only as, an agent and/or apparent agent of Imperium by administering the Claim (defined below) and/or the Lawsuit (defined below) on behalf of Imperium.  Imperium and Tristar are collectively referred to as "Imperium/Tristar."  Technology/Amtrust and Imperium/Tristar are collectively referred to as "Defendants."

## Jurisdiction and Venue

7) In accordance with 28 U.S.C. § 1332, the United States District Court has subject matter jurisdiction over this action.  First, there is complete diversity of citizenship between the parties: *Plaintiff* – Illinois (Omega); *Defendants* – New Hampshire/New York (Technology), Delaware/New York (Amtrust), Delaware/Texas (Imperium), and California (Tristar).  Second,

the amount in controversy, exclusive of interests and costs, exceeds $75,000.00: (a) a demand of $2,750,000.00 was made upon Omega in the Lawsuit (defined and detailed below) and (b) Imperium/Tristar has already paid in excess of approximately $175,000.00 to McWorthey (discussed below) for his alleged injuries in connection with the Claim (defined below).

8)   In accordance with the United States Constitution, Federal Rule of Civil Procedure 4, and RSMo. § 506.500, this Court has personal jurisdiction over the Defendants because, among other things, they have each transacted business in Missouri and/or made a contract within Missouri. Significantly, in addition to the supporting reasons discussed below, each of the Defendants is also registered to do business, and maintains a registered agent, with the Missuori Secretary of State.

9)   In accordance with 28 U.S.C. § 1391, venue is proper in the Eastern District of Missouri because the Defendants are considered residents of the Eastern District of Missouri.

**Background**

10)   In or around February of 2011, Omega was hired as a demolition subcontractor for a construction project on the Milton Madison Bridge ("Project"). The Milton Madison Bridge was located over the Ohio River on U.S. Route 421 between Milton, Kentucky and Madison, Indiana.

11)   In connection with the Project, Omega purchased Worker's Compensation and Employers Liability insurance policies from Technology and Imperium. The Technology policy is No. TARIN59597-00 and its effective dates were July 24, 2013 through July 24, 2014 ("Technology Policy"). The Imperium Policy is No. IERD-01000660-00 and its effective dates were January 1, 2013 through October 1, 2013 ("Imperium Policy").

12)   The Technology Policy and the Imperium Policy were both procured through, and delivered to, Omega's broker, Assurance Agency, Ltd. ("Assurance").

13) On or about July 24, 2013, an Omega employee, James McWorthey ("McWorthey"), alleged he was injured while working for Omega on the Project.

14) On or about July 26, 2013, Omega informed Imperium of McWorthey's alleged injury by submitting an Employer's First Report of Injury form to Imperium ("Claim"). Imperium retained Tristar to investigate, manage, and/or administer the Claim. Among other things, Imperium/Tristar hired Genex Services, LLC to monitor McWorthey's medical status and began paying McWorthey benefits in connection with the Claim.

15) On or about August 12, 2013, however, Imperium/Tristar represented to Assurance that the Claim was a "Longshore claim," which was "specifically excluded" from coverage under the Imperium Policy. According to Imperium/Tristar, it would "be doing nothing further" on the Claim.

16) Given Imperium's/Tristar's sudden removal of itself from the Claim, on or about August 12, 2013, Assurance recommended to Omega that it submit the Claim to the "USL&H insurer in IN," Technology. According to Assurance, it had communicated with Technology and Technology indicated that Omega should submit the Claim. On or about August 12, 2013, Omega submitted an Employer's First Report of Injury form relating to the Claim to Technology/Amtrust.

17) On or about August 15, 2013, McWorthey filed a judicial Petition for Damages ("Complaint") against Omega and Walsh Construction Company, LLC in the Circuit Court of St. Louis, Missouri. The action is captioned <u>James McWorthey v. Omega Demolition Corp. and Walsh Construction, LLC</u>[1], Cause No.: 1422-CC00253 ("Lawsuit").

---

[1] Walsh Construction Company, LLC was the general contractor for the Project. McWorthey voluntarily dismissed Walsh Construction Company, LLC from the Lawsuit on March 23, 2014.

18) On or about September 17, 2013, Walsh Construction, LLC was served with the Lawsuit. At this same time, Walsh Construction, LLC contacted Assurance directly by email. According to Walsh, because it was a "certificate holder" on "Omega's Marine Liability Policy" it desired to "place Omega's Marine carrier on notice of this loss." Walsh Construction, LLC attached the Complaint to its email. Assurance forwarded the email to Omega.

19) Omega was not served with the Complaint, however, until on or about December 10, 2013, through its registered agent in Illinois. Omega's registered agent did not immediately inform Omega that it had been served with the Complaint. Instead, on or about January 16, 2014, Omega received a telephone call from an attorney for Walsh Construction, LLC, which informed Omega that no one had appeared for a recent court date in the Lawsuit.

20) On or about January 16, 2014, Omega's employee, Rhonda Lenzi ("Lenzi"), thus sent an email to Technology/Amtrust. The email stated the following: "Please contact me we are in need of claims status update as we received a call for a missed court appearance. I will forward that documentation as well." Lenzi then forwarded the Complaint to Technology/Amtrust in a second email.

21) Paragraph 1 of the Complaint states: "Plaintiff brings this action under the Jones Act (46 USCA Sec 33) for negligence and under General Maritime Law for maintenance, cure and wages." The Complaint generally alleges that, on or about July 24, 2013, McWorthey was injured by demolition debris while working for Omega as a crewmember on a vessel in the Ohio River.[2]

---

[2] In the proceedings and filings related to the Lawsuit, Omega has, and does, deny these allegations.

22) At this time, Technology/Amtrust did not provide Omega with a reservation of rights letter or communicate in any way to Omega that Technology/Amtrust had any reason for, or intention to, deny any coverage for the Lawsuit.

23) Instead, on or about January 22, 2014, Technology/Amtrust retained Holtkamp, Liese, Schultz & Hilliker, P.C. ("Holtkamp") in St. Louis, Missouri to represent Omega in the Lawsuit.[3] Holtkamp attorney, Jerry R. Wilding ("Wilding"), was internally assigned to handle the matter for Holtkamp. Holtkamp and Wilding are collectively referred to as "Holtkamp/Wilding."

24) On or about February 6, 2014, Holtkamp/Wilding filed an appearance on behalf of Omega in the Lawsuit. From this point, and through August of 2014, Holtkamp/Wilding continued defending Omega in the Lawsuit. Among other things, under the supervision of Technology/Amtrust, Holtkamp/Wilding: (a) filed an answer to the Complaint; (b) propounded interrogatories and document production requests; (c) filed a motion for change of venue; (d) worked on responding to interrogatories and requests for production of documents; and (e) attended court multiple times. During this time, Holtkamp/Wilding also corresponded with Technology/Amtrust on at least five separate occasions regarding the status of the case and in seeking assistance with strategic decisions or responding to discovery.

25) Significantly, one of the items Holtkamp/Wilding corresponded with Technology/Amtrust about was whether Technology was defending Omega under a reservation of rights.

26) McWorthey had served Omega with interrogatories as part of the discovery process for the Lawsuit. Interrogatory number 36 asked: "whether the defense provided to [Omega] is

---

[3] Technology/Amtrust had previously retained Holtkamp to represent various insureds from Holtkamp's Missouri office in dozens, if not hundreds, of Missouri Worker's Compensation or civil defense claims.

being conducted under a reservation of rights." On March 13, 2014, in an email to Technology/Amtrust, Holtkamp/Wilding asked, among other things: "Is this claim being defended under a reservation of rights.?" Technology/Amtrust never responded to Wilding. Around this same time, in an email to Lenzi, Holtkamp/Wilding also asked if Lenzi knew the answer to the question. On or about March 21, 2014, Lenzi responded by stating: "unknown." Holtkamp/Wilding eventually signed, and served, Omega's answer to interrogatories to McWorthey on or about October 15, 2014. In answer to the question regarding "whether the defense provided to [Omega] is being conducted under a reservation of rights," Holtkamp/Wilding answered: "No."

27) On or about April 14, 2014 and July 10, 2014, Holtkamp sent invoices to Technology for the attorney's fees and costs incurred while defending Omega in the Lawsuit between January 22, 2014 and June 10, 2014. Technology has mailed two payments to Holtkamp – on April 10, 2014 and June 17, 2014 – for its defense of Omega in the Lawsuit.

28) At or about some point in August of 2014, in a telephone call from Imperium/Tristar, Holtkamp/Wilding was informed that, contrary to Imperium's/Tristar's prior representation that it would do "nothing further,"[4] Imperium/Tristar would be taking over administration of the Lawsuit. Imperium/Tristar further instructed Holtkamp to send future invoices for attorney's fees and costs related to defending Omega in the Lawsuit to Imperium/Tristar.[5]

---

[4] It must also be noted that, contrary to Imperium's/Tristar's representation that it would do "nothing further," on or about November 26, 2014, Imperium/Tristar informed Omega that, although McWorthey had never actually "filed" a Worker's Compensation claim, for some reason unknown to Omega, Imperium/Tristar has nonetheless been paying McWorthey benefits ever since he was allegedly injured. According to Imperium/Tristar, as of November 26, 2014, it had paid McWorthey approximately $175,000.00 in weekly benefits and medical expenses.
[5] Tristar had previously retained Holtkamp to represent various insureds from Holtkamp's Missouri office in dozens, if not hundreds, of Missouri Worker's Compensation or civil defense claims.

29) At this time, Imperium/Tristar did not provide Holtkamp/Wilding with a reservation of rights letter. Nor, at this time, did Imperium/Tristar provide Omega with a reservation of rights letter or communicate in any way to Omega that Imperium/Tristar had any reason for, or intention to, deny any coverage for the Lawsuit.

30) From this point, and through the present, Imperium/Tristar has, and continues to, administer the Claim, and work with Holtkamp/Wilding, in defense of the Lawsuit. Among other things, Holtkamp/Wilding has corresponded with Imperium/Tristar regarding the Demand (defined below). On or about October 10, 2014, Holtkamp/Wilding submitted an invoice to Imperium/Tristar for attorney's fees and costs related to defending Omega in the Lawsuit from July 18, 2014 to September 29, 2014.

31) On or about November 12, 2014, Omega received correspondence from Holtkamp/Wilding regarding the Lawsuit. The correspondence informed Omega that, as part of a detailed written letter with exhibits, on November 10, 2014, a demand had been made by McWorthey for settlement of the Lawsuit in the amount of 2,750,000.00, which would expire on December 1, 2014 ("Demand"). Among other things, the Demand alleged that McWorthey has suffered "skull, facial, brain, neck and shoulder" injuries from being struck by a steel beam that "propelled out of the water"; enclosed approximately fifty pages of medical records; and provided various jury verdict reports of allegedly similar cases litigated by some of the same counsel, which resulted in multi-million dollar awards.

32) The correspondence from Holtkamp/Wilding also stated the following:

> Despite the fact that this matter is not being defended under a reservation of rights, it is my understanding that there is no insurance coverage for this Jones Act claim. The risk here is that if … this case goes to trial and there is a large verdict, Omega Demolition may be solely responsible for satisfying the judgment, if the insurance company refuses to provide coverage based upon a position that there is no Jones Act insurance.[6]

33) This was the *first time* anyone had ever communicated anything to Omega suggesting in any way that there may not be coverage for the Lawsuit.

34) Omega was shocked. It asked Holtkamp/Wilding to reach out to whoever was necessary to determine whether Technology/Amtrust and/or Imperium/Tristar intended to even consider making any offer to settle the Lawsuit. Holtkamp/Wilding complied.

35) But both Technology/Amtrust and Imperium/Tristar communicated to Holtkamp/Wilding that they would not even consider making any offer, nor contribute to the payment of any settlement or judgment, in connection with the Lawsuit. According to both Technology/Amtrust and Imperium/Tristar, neither the Technology Policy nor the Imperium Policy provides coverage for claims made under the Jones Act.

36) Nevertheless, at this time, Technology/Amtrust and Imperium/Tristar still did not provide any reservation of rights letter to Holtkamp/Wilding or Omega.

37) On or about December 30, 2014, Imperium/Tristar sent an email to Holtkamp/Wilding and Omega. After discussing a peripheral issue, and in an ancillary fashion, Imperium/Tristar stated the following: "I am also attaching a reservation of rights letter for your files." This was the *first time* Omega had received any reservation of rights letter from anyone.

---

[6] The inclusion of this statement is not, nor should it be construed as, an express or implied waiver of any attorney-client privilege between Holtkamp/Wilding and Omega or otherwise. Rather, the information quoted from the communication contains only non-privileged and/or obvious information, which was already provided to McWorthey as part of Omega's answers to interrogatories, document production requests, and otherwise in the Lawsuit.

38) The reservation of rights letter ("ROR Letter"), however, has nothing to do with the Lawsuit. The ROR Letter is from Tristar and addressed to Omega. The author identifies it as being related to Imperium and the Imperium Policy. The first sentence states: "Tristar Risk Management is the authorized claims representative for Imperium Insurance Company [*sic*] In connection with the above-captioned loss please accept the following." The "Date of Loss" is identified as "7/24/13" and the "Employee" is "James McWorthey." But the ROR Letter says nothing about the Jones Act or the Lawsuit. Rather, the ROR Letter claims it "received notification" of a "Longshore Workers Claim." According to the ROR Letter, Imperium is "expressly reserving the right, under the policy provisions, to deny coverage for defense and indemnification based on the fact that your policy does not cover LongShore Workers Claims."

39) As of the date of this filing: (a) the Demand has expired,[7] discovery is proceeding, and the Lawsuit is set for trial on August 17, 2015; (b) Technology/Amtrust has not provided Omega with any reservation of rights letter; (c) Imperium/Tristar has not provided Omega with a reservation of rights letter that mentions either the Jones Act or the Lawsuit; (d) Technology/Amtrust has not filed a declaratory action against Omega to determine its rights and obligations under the Technology Policy; and (e) Imperium/Tristar has not filed a declaratory action against Omega to determine its rights and obligations under the Imperium Policy.

## Count I
## Declaratory Judgment (28 U.S.C. § 2201) As To Technology/Amtrust

40) Omega re-alleges the preceding paragraphs 1-39 as if stated fully herein.

41) Omega informed Technology/Amtrust of the Lawsuit by providing it with the Complaint. The Complaint placed Technology/Amtrust on notice that the Lawsuit was a judicial

---

[7] McWorthey's attorneys have also communicated to Holtkamp/Wilding that they will not make any further demands to settle the Lawsuit. Instead, they intend to proceed with preparation for, and trial of, the Lawsuit.

action seeking damages against Omega under the Jones Act. As of the moment it received the Complaint from Omega (and possibly earlier), Technology/Amtrust was aware of the facts it now believes provide it with a right to deny coverage under the Technology Policy for the Lawsuit.

42) But Technology/Amtrust did not deny coverage for the Lawsuit. Nor did Technology/Amtrust ever provide Omega with a reservation of rights letter or file a declaratory judgment action. In fact, not only did Technology/Amtrust never provide Omega with a reservation of rights letter or file a declaratory judgment action, it never even suggested to Omega in any way that the Technology Policy might not provide coverage for the Lawsuit *until after* managing, participating in, and paying for, Omega's defense for at least eight months (and possibly longer). Indeed, Technology/Amtrust never suggested to Omega in any way that the Technology Policy would not provide coverage for the Lawsuit *until after* Omega received the Demand. In short, Technology/Amtrust has simply abandoned Omega.

43) As a consequence of Technology's/Amtrust's conduct, Omega has been substantially prejudiced. Among other things, Omega (a) was denied the opportunity to select its own counsel and/or assume its own defense at the outset of the Lawsuit due to Technology's/Amtrust's conflict of interest; (b) was denied the opportunity to seek a resolution of the Lawsuit at an earlier (potentially less expensive) point in the litigation; (c) was denied substantial time to prepare, and plan, for the financial impact of a potentially large settlement or judgment it may now have to somehow absorb; (d) now faces a potentially devastating judgment; and (e) has incurred substantial attorney's fees and costs in connection with retaining counsel to pursue this action for coverage.

44) Technology/Amtrust is consequently estopped from raising any and all defenses to coverage under the Technology Policy and must provide full coverage to Omega for the costs of defense and indemnification for the Lawsuit.

45) There is a real and substantial controversy between Omega and Technology/Amtrust. Omega has a tangible legal interest in obtaining full coverage of costs and defense for the Lawsuit under the Technology Policy. Technology/Amtrust opposes Omega's interest by refusing to provide full coverage to Omega for costs of defense and indemnification for the Lawsuit under the Technology Policy.

46) This Court is capable of providing a resolution of this controversy between Omega and Technology/Amtrust.

WHEREFORE, Omega respectfully requests that this Court enter a judgment in favor of Omega and against Technology/Amtrust, which provides the following:

    a) A finding that Technology/Amtrust is estopped from raising any and all defenses to coverage for costs of defense and indemnification of the Lawsuit under the Technology Policy;

    b) A finding that Technology/Amtrust must provide and/or reimburse Omega for any costs of defense of the Lawsuit under the Technology Policy;

    c) A finding that Technology/Amtrust must indemnify Omega for any settlement of, or judgment in, the Lawsuit under the Technology Policy; and

    d) An award in favor of Omega and against Technology/Amtrust for the attorney's fees and costs incurred by Omega in connection with this action for coverage.

## Count II
## Declaratory Judgment (28 U.S.C. § 2201) As To Imperium/Tristar

47) Omega re-alleges the preceding paragraphs 1-39 as if stated fully herein.

48) In or around August of 2014, and contrary to Imperium's/Tristar's prior representation that it would do "nothing further," Imperium/Tristar undertook the management and administration of the defense of Omega for the Lawsuit. At this time, Imperium/Tristar was on notice that the Lawsuit was a judicial action seeking damages under the Jones Act. This meant that Imperium/Tristar was aware of the facts it now believes provide it with a right to deny coverage under the Imperium Policy for the Lawsuit.

49) But Imperium/Tristar did not deny coverage for the Lawsuit at this time. Nor did Imperium/Tristar provide Omega with a reservation of rights letter or file a declaratory judgment action. In fact, not only did Imperium/Tristar not provide Omega with a reservation of rights letter or file a declaratory judgment action, it did not even suggest to Omega in any way that the Imperium Policy might not provide coverage for the ***Lawsuit*** *until after* managing, participating in, and instructing Holtkamp/Wilding to invoice it for, Omega's defense in the Lawsuit for at least three months (and possibly longer). Indeed, Imperium/Tristar never suggested to Omega in any way that the Imperium Policy would not provide coverage for the ***Lawsuit*** *until after* Omega received the Demand. Yet, in any event, the ROR Letter that Imperium/Tristar finally provided – *two months after Omega received the Demand* – does not even mention anything about the Jones Act or the Lawsuit.

50) As a consequence of Imperium's/Tristar's conduct, Omega has been substantially prejudiced. Among other things, Omega (a) was denied the opportunity to select its own counsel and/or assume its own defense at the outset of Imperium's/Tristar's involvement in the Lawsuit due to Imperium's/Tristar's conflict of interest; (b) was denied the opportunity to seek a

resolution of the Lawsuit at an earlier (potentially less expensive) point in the litigation; (c) was denied substantial time to prepare, and plan, for the financial impact of a potentially large settlement or judgment it may now have to somehow absorb; (d) now faces a potentially devastating judgment; and (e) has incurred substantial attorney's fees and costs in connection with retaining counsel to pursue this action for coverage.

51) Imperium/Tristar is consequently estopped from raising any and all defenses to coverage under the Imperium Policy and must provide full coverage to Omega for the costs of defense and indemnification for the Lawsuit.

52) There is a real and substantial controversy between Omega and Imperium/Tristar. Omega has a tangible legal interest in obtaining full coverage of costs and defense for the Lawsuit under the Imperium Policy. Imperium/Tristar opposes Omega's interest by refusing to provide full coverage to Omega for costs of defense and indemnification for the Lawsuit under the Imperium Policy.

53) This Court is capable of providing a resolution of this controversy between Omega and Imperium/Tristar.

WHEREFORE, Omega respectfully requests that this Court enter a judgment in favor of Omega and against Imperium/Tristar, which provides the following:

> a) A finding that Imperium/Tristar is estopped from raising any and all defenses to coverage for costs of defense and indemnification of the Lawsuit under the Imperium Policy;
>
> b) A finding that Imperium/Tristar must provide and/or reimburse Omega for any costs of defense of the Lawsuit under the Imperium Policy;
>
> c) A finding that Imperium/Tristar must indemnify Omega for any settlement of, or judgment in, the Lawsuit under the Technology Policy; and

d) An award in favor of Omega and against Imperium/Tristar for the attorney's fees and costs incurred by Omega in connection with this action for coverage.

        Respectfully submitted,
        OMEGA DEMOLITION CORP.

By: /s/Gregory D. Bulgrin
     One of Its Attorneys

David W. Gearhart (50292)
Gregory D. Bulgrin (59653)
(Local Counsel for Plaintiff)
LEWIS, RICE & FINGERSH, L.C.
600 Washington Avenue
Suite 2500
St. Louis, Missouri 63101
314-444-7600
dgearhart@lewisrice.com
gbulgrin@lewisrice.com

    -and-

Anthony M. Sciara (P75778)[8]
HARVEY KRUSE, P.C.
(Lead Counsel for Plaintiff)
1050 Wilshire Drive
Suite 320
Troy, Michigan 48084
248-649-7800
asciara@harveykruse.com

---

[8] A motion requesting admission pro hac vice for Anthony M. Sciara will be filed shortly.