## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI - EASTERN DIVISION

| | | |
|---|---|---|
| OMEGA DEMOLITION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:15-cv-00183-JAR |
| | ) | |
| TECHNOLOGY INSURANCE COMPANY, | ) | |
| INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| TECHNOLOGY INSURANCE COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| OMEGA DEMOLITION CORP., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

### DEFENDANT TECHNOLOGY INSURANCE COMPANY, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT OMEGA DEMOLITION CORP.

NOW COMES Defendant, Technology Insurance Company ("TIC"), by and through its attorneys, and for its Answer and Affirmative Defenses to Plaintiff, Omega Demolition Corporation's ("Omega") Complaint, states as follows:

### The Parties

1)      Plaintiff OMEGA DEMOLITION CORP. ("Omega") is a corporation organized under the laws of Illinois with its principal place of business at 31W566 Spaulding Road, Elgin, Illinois 60120. Among other things, Omega engages in the business of demolition and dismantlement.

**ANSWER:** TIC admits the allegations in Paragraph 1.

2)      Defendant TECHNOLOGY INSURANCE COMPANY, INC. ("Technology") is a corporation organized under the laws of New Hampshire with its principal place of business at

59 Maiden Lane, 6th Floor, New York City, New York 10038. Among other things, Technology engages in the business of providing Worker's Compensation and Employers Liability insurance to commercial customers.

**ANSWER:** TIC admits only that it is a New Hampshire insurance company and that it has issued workers compensation and employer's liabilities policies. TIC denies the remaining allegations in Paragraph 2.

3) Defendant AMTRUST NORTH AMERICA, INC. ("Amtrust") is a corporation organized under the laws of Delaware with its principal place of business at 59 Maiden Lane, 43rd Floor, New York City, New York 10038. Among other things, Amtrust engages in the business of underwriting and administering claims for insurance companies and their customers.

**ANSWER:** TIC admits only that Amtrust North America, Inc. ("Amtrust") is a Delaware corporation. TIC denies the remaining allegations in Paragraph 3 as phrased.

4) Defendant IMPERIUM INSURANCE COMPANY ("Imperium") is a company organized under the laws of Delaware with its principal place of business at 800 Gessner Road, Suite 600, Houston, Texas 77024. Among other things, Imperium engages in the business of providing Worker's Compensation and Employers Liability insurance to commercial customers.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and, therefore, denies same.

5) Defendant TRISTAR RISK MANAGEMENT, INC. ("Tristar") is a corporation organized under the laws of California with its principal place of business at 100 Oceangate, Suite 700, Long Beach, California 90802. Among other things, Tristar engages in the business of administering claims for insurance companies and their customers.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and, therefore, denies same.

6) At all times relevant, Amtrust was acting as, and is named only as, an agent and/or apparent agent of Technology by administering the Claim (defined below) and/or the Lawsuit (defined below) on behalf of Technology. Technology and Amtrust are collectively referred to as "Technology/Amtrust." At all times relevant, Tristar was acting as, and is named only as, an agent and/or apparent agent of Imperium by administering the Claim (defined below) and/or the Lawsuit (defined below) on behalf of Imperium. Imperium and Tristar are collectively referred to as "Imperium/Tristar." Technology/Amtrust and Imperium/Tristar are collectively referred to as "Defendants."

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 pertaining to Imperium Insurance Company ("Imperium") and Tristar Risk Management, Inc. ("Tristar") and, therefore, denies same. The remaining allegations in Paragraph 6 pertaining to TIC and Amtrust state legal conclusions to which no response is required. To the extent a response is required, TIC admits only that Omega named Amtrust as "an agent and/or apparent agent" of TIC. TIC denies the remaining allegations in Paragraph 6.

<u>**Jurisdiction and Venue**</u>

7)      In accordance with 28 U.S.C. § 1332, the United States District Court has subject matter jurisdiction over this action. First, there is complete diversity of citizenship between the parties: *Plaintiff* – <u>Illinois (Omega); *Defendants* – New Hampshire/New York (Technology), Delaware/New York (Amtrust), Delaware/Texas (Imperium), and California (Tristar).</u> Second, the amount in controversy, exclusive of interests and costs, exceeds $75,000.00: (a) a demand of $2,750,000.00 was made upon Omega in the Lawsuit (defined and detailed below) and (b) Imperium/Tristar has already paid in excess of approximately $175,000.00 to McWorthey (discussed below) for his alleged injuries in connection with the Claim (defined below).

**ANSWER:** The allegations in Paragraph 7 state legal conclusions to which no response is required. To the extent a response is required, TIC states the following: (1) TIC incorporates by reference herein its Answers to Paragraphs 1-5 set forth above in relation to the incorporation/principal place of business of the parties in this case; (2) TIC admits that Omega received a $2.75 million demand in the underlying lawsuit; and (3) TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 pertaining to any amounts paid by Imperium and Tristar and, therefore, denies same. TIC denies the remaining allegations in Paragraph 7.

8)      In accordance with the United States Constitution, Federal Rule of Civil Procedure 4, and RSMo. § 506.500, this Court has personal jurisdiction over the Defendants because, among other things, they have each transacted business in Missouri and/or made a contract within Missouri. Significantly, in addition to the supporting reasons discussed below,

each of the Defendants is also registered to do business, and maintains a registered agent, with the Missuori[sic] Secretary of State.

**ANSWER:** The allegations in Paragraph 8 state legal conclusions to which no response is required. To the extent a response is required, TIC states the following: (1) TIC admits that it is registered to do business and maintains a registered agent in Missouri, as does Amtrust; and (2) TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 pertaining to Imperium and Tristar and, therefore, denies same. TIC denies the remaining allegations in Paragraph 8 as phrased.

9)     In accordance with 28 U.S.C. § 1391, venue is proper in the Eastern District of Missouri because the Defendants are considered residents of the Eastern District of Missouri.

**ANSWER:** TIC denies the allegations in Paragraph 9.

### Background

10)     In or around February of 2011, Omega was hired as a demolition subcontractor for a construction project on the Milton Madison Bridge ("Project"). The Milton Madison Bridge was located over the Ohio River on U.S. Route 421 between Milton, Kentucky and Madison, Indiana.

**ANSWER:** TIC admits the allegations in Paragraph 10.

11)     In connection with the Project, Omega purchased Worker's Compensation and Employers Liability insurance policies from Technology and Imperium. The Technology policy is No. TARIN59597-00 and its effective dates were July 24, 2013 through July 24, 2014 ("Technology Policy"). The Imperium Policy is No. IERD-01000660-00 and its effective dates were January 1, 2013 through October 1, 2013 ("Imperium Policy").

**ANSWER:** TIC admits only that it issued Workers Compensation and Employer's Liability Policy No. TARIN59597-00 to Omega ("TIC Policy"). TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 as they pertain to Imperium and, therefore, denies same. TIC denies the remaining allegations in Paragraph 11.

12)     The Technology Policy and the Imperium Policy were both procured through, and delivered to, Omega's broker, Assurance Agency, Ltd. ("Assurance").

**ANSWER:** TIC admits only that Assurance Agency, Ltd. ("Assurance") was Omega's broker for the TIC Policy.  TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 as they pertain to Imperium and, therefore, denies same.  TIC denies the remaining allegations in Paragraph 12.

13)     On or about July 24, 2013, an Omega employee, James McWorthey ("McWorthey"), alleged he was injured while working for Omega on the Project.

**ANSWER:** TIC admits the allegations in Paragraph 13.

14)     On or about July 26, 2013, Omega informed Imperium of McWorthey's alleged injury by submitting an Employer's First Report of Injury form to Imperium ("Claim"). Imperium retained Tristar to investigate, manage, and/or administer the Claim. Among other things, Imperium/Tristar hired Genex Services, LLC to monitor McWorthey's medical status and began paying McWorthey benefits in connection with the Claim.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 and, therefore, denies same.

15)     On or about August 12, 2013, however, Imperium/Tristar represented to Assurance that the Claim was a "Longshore claim," which was "specifically excluded" from coverage under the Imperium Policy. According to Imperium/Tristar, it would "be doing nothing further" on the Claim.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 and, therefore, denies same.

16)     Given Imperium's/Tristar's sudden removal of itself from the Claim, on or about August 12, 2013, Assurance recommended to Omega that it submit the Claim to the "USL&H insurer in IN," Technology. According to Assurance, it had communicated with Technology and Technology indicated that Omega should submit the Claim. On or about August 12, 2013, Omega submitted an Employer's First Report of Injury form relating to the Claim to Technology/Amtrust.

**ANSWER:** Technology denies that it received a claim from Assurance on August 12, 2013. TIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16 and, therefore, denies same.

17) On or about August 15, 2013, McWorthey filed a judicial Petition for Damages ("Complaint") against Omega and Walsh Construction Company, LLC in the Circuit Court of St. Louis, Missouri. The action is captioned <u>James McWorthey v. Omega Demolition Corp. and Walsh Construction, LLC</u>[1], Cause No.: 1422-CC00253 ("Lawsuit").

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Footnote 1 of Paragraph 17 and, therefore, denies same. TIC admits the remaining allegations in Paragraph 17 as they relate to the action captioned, *James McWorthey v. Omega Demolition Corp. and Walsh Construction, LLC*, Cause No.: 1422-CC00253 (the "Underlying Lawsuit").

18) On or about September 17, 2013, Walsh Construction, LLC was served with the Lawsuit. At this same time, Walsh Construction, LLC contacted Assurance directly by email. According to Walsh, because it was a "certificate holder" on "Omega's Marine Liability Policy" it desired to "place Omega's Marine carrier on notice of this loss." Walsh Construction, LLC attached the Complaint to its email. Assurance forwarded the email to Omega.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 and, therefore, denies same.

19) Omega was not served with the Complaint, however, until on or about December 10, 2013, through its registered agent in Illinois. Omega's registered agent did not immediately inform Omega that it had been served with the Complaint. Instead, on or about January 16, 2014, Omega received a telephone call from an attorney for Walsh Construction, LLC, which informed Omega that no one had appeared for a recent court date in the Lawsuit.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 and, therefore, denies same.

20) On or about January 16, 2014, Omega's employee, Rhonda Lenzi ("Lenzi"), thus sent an email to Technology/Amtrust. The email stated the following: "Please contact me we are in need of claims status update as we received a call for a missed court appearance. I will

---

[1] Walsh Construction Company, LLC was the general contractor for the Project. McWorthey voluntarily dismissed Walsh Construction Company, LLC from the Lawsuit on March 23, 2014.

forward that documentation as well." Lenzi then forwarded the Complaint to Technology/Amtrust in a second email.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 and, therefore, denies same.

21)      Paragraph 1 of the Complaint states: "Plaintiff brings this action under the Jones Act (46 USCA Sec 33) for negligence and under General Maritime Law for maintenance, cure and wages." The Complaint generally alleges that, on or about July 24, 2013, McWorthey was injured by demolition debris while working for Omega as a crewmember on a vessel in the Ohio River.[2]

**ANSWER:** TIC admits the allegations in Paragraph 21 only to the extent that they accurately quote or recite the allegations in the Underlying Lawsuit.  TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Footnote 2 of Paragraph 21 and, therefore, denies same.  TIC denies the remaining allegations in Paragraph 21.

22)      At this time, Technology/Amtrust did not provide Omega with a reservation of rights letter or communicate in any way to Omega that Technology/Amtrust had any reason for, or intention to, deny any coverage for the Lawsuit.

**ANSWER:** TIC denies the allegations in Paragraph 22.

23)      Instead, on or about January 22, 2014, Technology/Amtrust retained Holtkamp, Liese, Schultz & Hilliker, P.C. ("Holtkamp") in St. Louis, Missouri to represent Omega in the Lawsuit.[3]  Holtkamp attorney, Jerry R. Wilding ("Wilding"), was internally assigned to handle the matter for Holtkamp.  Holtkamp and Wilding are collectively referred to as "Holtkamp/Wilding."

**ANSWER:** TIC admits only that the Holtkamp firm was retained in January 2014.  TIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23 and, therefore, denies same.

24)      On or about February 6, 2014, Holtkamp/Wilding filed an appearance on behalf of Omega in the Lawsuit. From this point, and through August of 2014, Holtkamp/Wilding continued defending Omega in the Lawsuit. Among other things, under the supervision of Technology/Amtrust, Holtkamp/Wilding: (a) filed an answer to the Complaint; (b) propounded

---

[2]  In the proceedings and filings related to the Lawsuit, Omega has, and does, deny these allegations.
[3]  Technology/Amtrust had previously retained Holtkamp to represent various insureds from Holtkamp's Missouri office in dozens, if not hundreds, of Missouri Worker's Compensation or civil defense claims.

interrogatories and document production requests; (c) filed a motion for change of venue; (d) worked on responding to interrogatories and requests for production of documents; and (e) attended court multiple times. During this time, Holtkamp/Wilding also corresponded with Technology/Amtrust on at least five separate occasions regarding the status of the case and in seeking assistance with strategic decisions or responding to discovery.

**ANSWER:** TIC admits only that Holtkamp defended Omega in the Underlying Lawsuit from the time it filed an appearance through August of 2014. TIC also admits that Holtkamp sent correspondence to TIC between February and August 2014. TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 pertaining to the date that Holtkamp made an appearance and, therefore, denies same. TIC denies the remaining allegations in Paragraph 24.

25) Significantly, one of the items Holtkamp/Wilding corresponded with Technology/Amtrust about was whether Technology was defending Omega under a reservation of rights.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 and, therefore, denies same.

26) McWorthey had served Omega with interrogatories as part of the discovery process for the Lawsuit. Interrogatory number 36 asked: "whether the defense provided to [Omega] is being conducted under a reservation of rights." On March 13, 2014, in an email to Technology/Amtrust, Holtkamp/Wilding asked, among other things: "Is this claim being defended under a reservation of rights.?" Technology/Amtrust never responded to Wilding. Around this same time, in an email to Lenzi, Holtkamp/Wilding also asked if Lenzi knew the answer to the question. On or about March 21, 2014, Lenzi responded by stating: "unknown." Holtkamp/Wilding eventually signed, and served, Omega's answer to interrogatories to McWorthey on or about October 15, 2014. In answer to the question regarding "whether the defense provided to [Omega] is being conducted under a reservation of rights," Holtkamp/Wilding answered: "No."

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 and, therefore, denies same.

27) On or about April 14, 2014 and July 10, 2014, Holtkamp sent invoices to Technology for the attorney's fees and costs incurred while defending Omega in the Lawsuit between January 22, 2014 and June 10, 2014. Technology has mailed two payments to Holtkamp – on April 10, 2014 and June 17, 2014 – for its defense of Omega in the Lawsuit.

**ANSWER:** TIC admits that it received invoices from the Holtkamp firm related to the defense of Omega in the underlying lawsuit. TIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 27 and, therefore, denies same.

28) At or about some point in August of 2014, in a telephone call from Imperium/Tristar, Holtkamp/Wilding was informed that, contrary to Imperium's/Tristar's prior representation that it would do "nothing further,"[4] Imperium/Tristar would be taking over administration of the Lawsuit. Imperium/Tristar further instructed Holtkamp to send future invoices for attorney's fees and costs related to defending Omega in the Lawsuit to Imperium/Tristar.[5]

**ANSWER:** TIC admits that Imperium/Tristar took over Omega's defense in the Underlying Lawsuit in or before August 2014. TIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 28 and, therefore, denies same.

29) At this time, Imperium/Tristar did not provide Holtkamp/Wilding with a reservation of rights letter. Nor, at this time, did Imperium/Tristar provide Omega with a reservation of rights letter or communicate in any way to Omega that Imperium/Tristar had any reason for, or intention to, deny any coverage for the Lawsuit.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29 and, therefore, denies same.

30) From this point, and through the present, Imperium/Tristar has, and continues to, administer the Claim, and work with Holtkamp/Wilding, in defense of the Lawsuit. Among other things, Holtkamp/Wilding has corresponded with Imperium/Tristar regarding the Demand (defined below). On or about October 10, 2014, Holtkamp/Wilding submitted an invoice to Imperium/Tristar for attorney's fees and costs related to defending Omega in the Lawsuit from July 18, 2014 to September 29, 2014.

---

[4] It must also be noted that, contrary to Imperium's/Tristar's representation that it would do "nothing further," on or about November 26, 2014, Imperium/Tristar informed Omega that, although McWorthey had never actually "filed" a Worker's Compensation claim, for some reason unknown to Omega, Imperium/Tristar has nonetheless been paying McWorthey benefits ever since he was allegedly injured. According to Imperium/Tristar, as of November 26, 2014, it had paid McWorthey approximately $175,000.00 in weekly benefits and medical expenses.

[5] Tristar had previously retained Holtkamp to represent various insureds from Holtkamp's Missouri office in dozens, if not hundreds, of Missouri Worker's Compensation or civil defense claims.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 and, therefore, denies same.

31)    On or about November 12, 2014, Omega received correspondence from Holtkamp/Wilding regarding the Lawsuit. The correspondence informed Omega that, as part of a detailed written letter with exhibits, on November 10, 2014, a demand had been made by McWorthey for settlement of the Lawsuit in the amount of $2,750,000.00, which would expire on December 1, 2014 ("Demand"). Among other things, the Demand alleged that McWorthey has suffered "skull, facial, brain, neck and shoulder" injuries from being struck by a steel beam that "propelled out of the water"; enclosed approximately fifty pages of medical records; and provided various jury verdict reports of allegedly similar cases litigated by some of the same counsel, which resulted in multi-million dollar awards.

**ANSWER:** TIC admits the allegations in Paragraph 31 pertaining to the November 10, 2014 demand, but only to the extent that said allegations are not inconsistent with the demand itself.    TIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 31 and, therefore, denies same.

32)    The correspondence from Holtkamp/Wilding also stated the following:

> Despite the fact that this matter is not being defended under a reservation of rights, it is my understanding that there is no insurance coverage for this Jones Act claim. The risk here is that if ... this case goes to trial and there is a large verdict, Omega Demolition may be solely responsible for satisfying the judgment, if the insurance company refuses to provide coverage based upon a position that there is no Jones Act insurance.[6]

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 and, therefore, denies same.

33)    This was the *first time* anyone had ever communicated anything to Omega suggesting in any way that there may not be coverage for the Lawsuit.

---

[6] The inclusion of this statement is not, nor should it be construed as, an express or implied waiver of any attorney-client privilege between Holtkamp/Wilding and Omega or otherwise. Rather, the information quoted from the communication contains only non-privileged and/or obvious information, which was already provided to McWorthey as part of Omega's answers to interrogatories, document production requests, and otherwise in the Lawsuit.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 and, therefore, denies same.

34)     Omega was shocked. It asked Holtkamp/Wilding to reach out to whoever was necessary to determine whether Technology/Amtrust and/or Imperium/Tristar intended to even consider making any offer to settle the Lawsuit. Holtkamp/Wilding complied.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 and, therefore, denies same.

35)     But both Technology/Amtrust and Imperium/Tristar communicated to Holtkamp/Wilding that they would not even consider making any offer, nor contribute to the payment of any settlement or judgment, in connection with the Lawsuit. According to both Technology/Amtrust and Imperium/Tristar, neither the Technology Policy nor the Imperium Policy provides coverage for claims made under the Jones Act.

**ANSWER:** TIC admits only that the TIC Policy does not provide coverage for a Jones Act claim.  TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 pertaining to Imperium/Tristar and, therefore, denies same.  TIC denies the remaining allegations in Paragraph 35.

36)     Nevertheless, at this time, Technology/Amtrust and Imperium/Tristar still did not provide any reservation of rights letter to Holtkamp/Wilding or Omega.

**ANSWER:** TIC denies the allegations in Paragraph 36 as they pertain to TIC.  TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 pertaining to Imperium/Tristar and, therefore, denies same.

37)     On or about December 30, 2014, Imperium/Tristar sent an email to Holtkamp/Wilding and Omega. After discussing a peripheral issue, and in an ancillary fashion, Imperium/Tristar stated the following: "I am also attaching a reservation of rights letter for your files." This was the *first time* Omega had received any reservation of rights letter from anyone.

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 and, therefore, denies same.

38)     The reservation of rights letter ("ROR Letter"), however, has nothing to do with the Lawsuit. The ROR Letter is from Tristar and addressed to Omega. The author identifies it as

being related to Imperium and the Imperium Policy. The first sentence states: "Tristar Risk Management is the authorized claims representative for Imperium Insurance Company [*sic*] In connection with the above-captioned loss please accept the following." The "Date of Loss" is identified as "7/24/13" and the "Employee" is "James McWorthey." But the ROR Letter says nothing about the Jones Act or the Lawsuit. Rather, the ROR Letter claims it "received notification" of a "Longshore Workers Claim." According to the ROR Letter, Imperium is "expressly reserving the right, under the policy provisions, to deny coverage for defense and indemnification based on the fact that your policy does not cover LongShore Workers Claims."

**ANSWER:** TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 and, therefore, denies same.

39)     As of the date of this filing: (a) the Demand has expired,[7] discovery is proceeding, and the Lawsuit is set for trial on August 17, 2015; (b) Technology/Amtrust has not provided Omega with any reservation of rights letter; (c) Imperium/Tristar has not provided Omega with a reservation of rights letter that mentions either the Jones Act or the Lawsuit; (d) Technology/Amtrust has not filed a declaratory action against Omega to determine its rights and obligations under the Technology Policy; and (e) Imperium/Tristar has not filed a declaratory action against Omega to determine its rights and obligations under the Imperium Policy.

**ANSWER:** TIC admits only that it understands that the demand in question has expired, and that discovery is proceeding in the underlying lawsuit.  TIC also admits that it did not need to file a declaratory judgment action, especially considering that Omega filed this action.  TIC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 pertaining to Imperium/Tristar and, therefore, denies same.  TIC denies the remaining allegations in Paragraph 39.

### Count I
### Declaratory Judgment (28 U.S.C. § 2201) As To Technology/Amtrust

40)     Omega re-alleges the preceding paragraphs 1-39 as if stated fully herein.

**ANSWER:** TIC incorporates by reference its answers to Paragraphs 1-39 as if set forth herein.

41)     Omega informed Technology/Amtrust of the Lawsuit by providing it with the Complaint. The Complaint placed Technology/Amtrust on notice that the Lawsuit was a judicial

---

[7]  McWorthey's attorneys have also communicated to Holtkamp/Wilding that they will not make any further demands to settle the Lawsuit. Instead, they intend to proceed with preparation for, and trial of, the Lawsuit.

action seeking damages against Omega under the Jones Act. As of the moment it received the Complaint from Omega (and possibly earlier), Technology/Amtrust was aware of the facts it now believes provide it with a right to deny coverage under the Technology Policy for the Lawsuit.

**ANSWER:** To the extent that the allegations in Paragraph 41 state a legal conclusion, no answer is required and none is made. To the extent an answer is required, TIC denies the allegations in Paragraph 41.

42) But Technology/Amtrust did not deny coverage for the Lawsuit. Nor did Technology/Amtrust ever provide Omega with a reservation of rights letter or file a declaratory judgment action. In fact, not only did Technology/Amtrust never provide Omega with a reservation of rights letter or file a declaratory judgment action, it never even suggested to Omega in any way that the Technology Policy might not provide coverage for the Lawsuit *until after* managing, participating in, and paying for, Omega's defense for at least eight months (and possibly longer). Indeed, Technology/Amtrust never suggested to Omega in any way that the Technology Policy would not provide coverage for the Lawsuit *until after* Omega received the Demand. In short, Technology/Amtrust has simply abandoned Omega.

**ANSWER:** TIC denies the allegations in Paragraph 42.

43) As a consequence of Technology's/Amtrust's conduct, Omega has been substantially prejudiced. Among other things, Omega (a) was denied the opportunity to select its own counsel and/or assume its own defense at the outset of the Lawsuit due to Technology's/Amtrust's conflict of interest; (b) was denied the opportunity to seek a resolution of the Lawsuit at an earlier (potentially less expensive) point in the litigation; (c) was denied substantial time to prepare, and plan, for the financial impact of a potentially large settlement or judgment it may now have to somehow absorb; (d) now faces a potentially devastating judgment; and (e) has incurred substantial attorney's fees and costs in connection with retaining counsel to pursue this action for coverage.

**ANSWER:** To the extent that the allegations in Paragraph 43 state a legal conclusion, no answer is required and none is made. To the extent an answer is required, TIC denies the allegations in Paragraph 43.

44) Technology/Amtrust is consequently estopped from raising any and all defenses to coverage under the Technology Policy and must provide full coverage to Omega for the costs of defense and indemnification for the Lawsuit.

**ANSWER:** To the extent that the allegations in Paragraph 44 state a legal conclusion, no answer is required and none is made. To the extent an answer is required, TIC denies the allegations in Paragraph 44.

45) There is a real and substantial controversy between Omega and Technology/Amtrust. Omega has a tangible legal interest in obtaining full coverage of costs and defense for the Lawsuit under the Technology Policy. Technology/Amtrust opposes Omega's interest by refusing to provide full coverage to Omega for costs of defense and indemnification for the Lawsuit under the Technology Policy.

**ANSWER:** To the extent that the allegations in Paragraph 45 state a legal conclusion, no answer is required and none is made. To the extent an answer is required, TIC denies the allegations in Paragraph 45.

46) This Court is capable of providing a resolution of this controversy between Omega and Technology/Amtrust.

**ANSWER:** To the extent that the allegations in Paragraph 46 state a legal conclusion, no answer is required and none is made. To the extent an answer is required, TIC denies the allegations in Paragraph 46.

**Count II**
**Declaratory Judgment (28 U.S.C. § 2201) As To Imperium/Tristar**

47) Omega re-alleges the preceding paragraphs 1-39 as if stated fully herein.

**ANSWER:** TIC incorporates by reference its answers to Paragraphs 1-39 as if set forth herein.

48) In or around August of 2014, and contrary to Imperium's/Tristar's prior representation that it would do "nothing further," Imperium/Tristar undertook the management and administration of the defense of Omega for the Lawsuit. At this time, Imperium/Tristar was on notice that the Lawsuit was a judicial action seeking damages under the Jones Act. This meant that Imperium/Tristar was aware of the facts it now believes provide it with a right to deny coverage under the Imperium Policy for the Lawsuit.

**ANSWER:** As the allegations in Paragraph 48 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 48.

49) But Imperium/Tristar did not deny coverage for the Lawsuit at this time. Nor did Imperium/Tristar provide Omega with a reservation of rights letter or file a declaratory judgment action. In fact, not only did Imperium/Tristar not provide Omega with a reservation of rights letter or file a declaratory judgment action, it did not even suggest to Omega in any way that the Imperium Policy might not provide coverage for the ***Lawsuit*** *until after* managing, participating in, and instructing Holtkamp/Wilding to invoice it for, Omega's defense in the Lawsuit for at least three months (and possibly longer). Indeed, Imperium/Tristar never suggested to Omega in any way that the Imperium Policy would not provide coverage for the ***Lawsuit*** *until after* Omega received the Demand. Yet, in any event, the ROR Letter that Imperium/Tristar finally provided – *two months after Omega received the Demand* – does not even mention anything about the Jones Act or the Lawsuit.

**ANSWER:** As the allegations in Paragraph 49 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 49.

50) As a consequence of Imperium's/Tristar's conduct, Omega has been substantially prejudiced. Among other things, Omega (a) was denied the opportunity to select its own counsel and/or assume its own defense at the outset of Imperium's/Tristar's involvement in the Lawsuit due to Imperium's/Tristar's conflict of interest; (b) was denied the opportunity to seek a resolution of the Lawsuit at an earlier (potentially less expensive) point in the litigation; (c) was denied substantial time to prepare, and plan, for the financial impact of a potentially large settlement or judgment it may now have to somehow absorb; (d) now faces a potentially devastating judgment; and (e) has incurred substantial attorney's fees and costs in connection with retaining counsel to pursue this action for coverage.

**ANSWER:** As the allegations in Paragraph 50 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 50.

51) Imperium/Tristar is consequently estopped from raising any and all defenses to coverage under the Imperium Policy and must provide full coverage to Omega for the costs of defense and indemnification for the Lawsuit.

**ANSWER:** As the allegations in Paragraph 51 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 51.

52) There is a real and substantial controversy between Omega and Imperium/Tristar. Omega has a tangible legal interest in obtaining full coverage of costs and defense for the Lawsuit under the Imperium Policy. Imperium/Tristar opposes Omega's interest by refusing to provide full coverage to Omega for costs of defense and indemnification for the Lawsuit under the Imperium Policy.

**ANSWER:** As the allegations in Paragraph 52 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 52.

53) This Court is capable of providing a resolution of this controversy between Omega and Imperium/Tristar.

**ANSWER:** As the allegations in Paragraph 53 are not directed against TIC, no response is required, and none is given. To the extent a response is required, TIC denies the allegations in Paragraph 53.

## AFFIRMATIVE DEFENSES

TIC asserts the following affirmative defenses in connection with Omega's Complaint without assuming or waiving any burden of proof or persuasion that remains on Omega:

### First Affirmative Defense – (Exclusion 9)

54) The Employer's Liability section of the TIC Policy contains the following exclusion:

> 9. Bodily injury to any person in work subject to the Federal Employer's Liability Act … any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

55)     Exclusion 9 precludes coverage under the Employer's Liability section of the TIC Policy for a claim under the Jones Act.

56)     The Underlying Lawsuit asserts a claim against Omega under the Jones Act.

57)     Consequently, as a result of the application of Exclusion 9, there is no coverage under the Employer's Liability section of the TIC Policy for the Underlying Lawsuit.

58)     TIC, therefore, has no defense or indemnity obligation in connection with the Underlying Lawsuit.

**Second Affirmative Defense –**
**(The Accident Occurred In An Uncovered State)**

59)     Coverage under the Employer's Liability section of the TIC Policy is limited to certain specified workplaces in Illinois and Indiana.

60)     Upon information and belief, however, the accident that is the subject of the Underlying Lawsuit occurred in Kentucky.

61)     As there is no coverage under the Employer's Liability section of the TIC Policy for an accident in Kentucky, TIC has no defense or indemnity obligation in connection with the Underlying Lawsuit.

**Third Affirmative Defense –**
**(Primary/Non-Contributory Coverage For Omega From**
**McBride River Services And Advanced Explosive Demolition, Inc.)**

62)     Omega entered into Subcontract Agreements with McBride River Services, LLC ("McBride") and Advanced Explosive Demolition, Inc. ("AED") (collectively, the "Subcontract Agreements").

63)     The Subcontract Agreements provide that "The coverage afforded under any insurance policy obtained hereunder shall be primary and noncontributory to any valid and collectible insurance carried separately by any of the Additional Insureds."

64)     On information and belief, both McBride and AED obtained liability policies that provide additional insured coverage for Omega on a primary, noncontributory basis that applies to the Underlying Lawsuit.

65)     TIC, therefore, has no obligation in connection with the Underlying lawsuit until such time as all primary and noncontributory additional insured coverage applicable to the Underlying Lawsuit has been fully and completely exhausted.

WHEREFORE, TIC respectfully requests that this Court enter judgment in its favor and against Omega on Count I of Omega's Complaint, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT OMEGA DEMOLITION CORP.

NOW COMES Defendant/Counter-Plaintiff, Technology Insurance Company ("TIC"), by and through its attorneys, and submits this Counterclaim against Plaintiff/Counter-Defendant, Omega Demolition Corporation ("Omega").  In support thereof, TIC states as follows:

## PARTIES AND JURISDICTION

1.     TIC is a New Hampshire insurance company with its principal place of business in New Hampshire.

2.     Omega is an Illinois corporation with its principal place of business in Illinois.

3.     Omega is seeking coverage from TIC in connection with an underlying lawsuit involving a single claim for monetary relief in excess of $75,000.  *See* Docket No. 1 ¶¶7, 17.

4.     This Court has jurisdiction over this matter under 28 U.S.C. §1332(a)(1) because there is complete diversity of citizenship between TIC, on the one hand, and Omega, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court has authority to declare the rights and obligations of the parties in relation to the terms and provisions of the policy that TIC issued to Omega.

## THE UNDERLYING LAWSUIT

6.      James McWorthy ("McWorthy") filed a lawsuit against Omega in the Circuit Court of St. Louis, County, in St. Louis, Missouri, captioned, *James McWorthy v. Omega Demolition Corp.*, Cause No.: 1422-CC00253 ("Underlying Lawsuit").

7.      The Underlying Lawsuit alleges that McWorthy was working as an employee of Omega on the Ohio River when he was injured.

8.      The Underlying Lawsuit purports to allege a claim against Omega under the Jones Act, 46 U.S.C. 33, *et seq*.

9.      Upon information and belief, the accident that is the subject of the Underlying Lawsuit occurred in Kentucky.

## THE TIC POLICY

10.     TIC issued Workers Compensation and Employer's Liability Policy No. TARIN59597-00 to Omega, which was effective from July 24, 2013 through May 9, 2014 ("TIC Policy").

11.     The TIC Policy contains the following provisions, in relevant part:

1.      Name of Insured:      OMEGA DEMOLITION CORPORATION
        Mailing Address:      31W566 SPAULDING ROAD, ELGIN, IL

        Additional Workplaces:      See WC 174

3. A.   Workers Compensation Insurance: Part one of this Policy applies to the Workers Compensation Law of the following states: IN.
B.      Employers Liability Insurance: Part two of this Policy applies to the workplace(s) listed in item 1.

12.     Form WC 174 in the TIC Policy lists a single address: 618 E. Vaughn Drive, Madison, IN 47250.

13.     The Employer's Liability section of the TIC Policy includes the following exclusion:

> This insurance does not cover:
>
> 9.  Bodily injury to any person in work subject to the Federal Employer's Liability Act … any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

14.     Other terms, exclusions, definitions, and conditions of the TIC Policy may apply to the Underlying Lawsuit.  Nothing in this Counterclaim should be construed as a waiver by TIC of any other coverage defense available under its policy or the law, and TIC reserves the right to raise all other policy terms, definitions, exclusions, and conditions as defenses to coverage.

## COUNT I – (Exclusion 9)

15.     TIC incorporates by reference Paragraphs 1 through 14 above as if they were fully set forth herein.

16.     Exclusion 9 in the Employer's Liability section of the TIC Policy precludes coverage for a Jones Act claim.

17.     The Underlying Lawsuit asserts a claim against Omega under the Jones Act.

18.     Consequently, Exclusion 9 precludes any coverage under the TIC Policy in connection with the Underlying Lawsuit.

19.     TIC, therefore, has no obligation to defend or indemnify Omega in the Underlying Lawsuit under the TIC Policy.

## COUNT II – (The Accident Occurred In An Uncovered State)

20.     TIC incorporates by reference Paragraphs 1 through 14 above as if they were fully set forth herein.

21.     The Employer's Liability section of the TIC Policy is limited to the specific Omega workplaces listed in the policy in Illinois and Indiana.

22.     Upon information and belief, however, the Underlying Lawsuit is based upon a claim that occurred in a state for which there is no coverage, Kentucky.

23.     As the accident did not occur in a covered state, there is no coverage under the Employer's Liability section of the TIC Policy for the Underlying Lawsuit.

24.     TIC, therefore, has no obligation to defend or indemnify Omega in the Underlying Lawsuit under the TIC Policy.

## COUNT III –
### (Primary/Non-Contributory Coverage For Omega From McBride River Services And Advanced Explosive Demolition, Inc.)

25.     TIC incorporates by reference Paragraphs 1 through 14 above as if they were fully set forth herein.

26.     Omega entered into Subcontract Agreements with McBride River Services, LLC ("McBride") and Advanced Explosive Demolition, Inc. ("AED") (collectively, the "Subcontract Agreements") in relation to its work on the Ohio River, which is the subject of the Underlying Lawsuit.

27.     The Subcontract Agreements provide that "The coverage afforded under any insurance policy obtained hereunder shall be primary and noncontributory to any valid and collectible insurance carried separately by any of the Additional Insureds."

28.     On information and belief, both McBride and AED obtained liability policies that provide additional insured coverage for Omega on a primary, noncontributory basis that applies to the Underlying Lawsuit.

29.     TIC, therefore, has no obligation in connection with the Underlying Lawsuit until such time as all primary and noncontributory additional insured coverage applicable to the Underlying Lawsuit has been exhausted.

## PRAYER FOR RELIEF

WHEREFORE, TIC respectfully requests that this Court enter judgment in its favor and against Omega, and find and declare:

A.     That the TIC Policy does not potentially or actually cover any portion of the claim against Omega in the Underlying Lawsuit;

B.     That TIC has no duty to defend or indemnify Omega in connection with the Underlying Lawsuit; and

C.     That this Court grant TIC such other and further relief as it deems just and proper under the circumstances.

_____/s/ Kevin M. Lougachi_____

Kevin M. Lougachi (*pro hac vice*)

KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC

150 South Wacker Drive, Suite 1700

Chicago, Illinois  60606

Tel:  312.431.3700

Fax: 312.431.3670

klougachi@karballaw.com

- and -

Michael L. Young      # 52058MO

email: mly@heplerbroom.com

Katherine E. Jacobi    # 63907MO

email: kej@heplerbroom.com

HEPLERBROOM LLC

211 North Broadway, Suite 2700

St. Louis, Missouri 63102

314-241-6160 telephone

314-241-6116 facsimile

*Attorneys for Defendant Technology Insurance Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2015, I filed and served **DEFENDANT TECHNOLOGY INSURANCE COMPANY, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT OMEGA DEMOLITION CORP.** by electronic means on the following counsel of record in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Anthony M. Sciara
Harvey Kruse, P.C.
1050 Wilshire Drive, Ste. 320
Troy, Michigan 48084
asciara@harveykruse.com
- and -
David G. Gearhart
Gregory D. Bulgrin
Lewis Rice LLC
600 Washington Ave., Ste. 2500
St. Louis, MO 63101
dgearhart@lewisrice.com
gbulgrin@lewisrice.com
*Attorneys for Plaintiff Omega Demolition Corporation*

Stephen J. Moore
James Morris
Jessica Bolten Cozart
Galloway, Johnson, Tompkins, Burr & Smith
7710 Carondelet Ave., Ste. 217
St. Louis, MO 63105
smoore@gallowayjohnson.com
jmorris@gallowayjohnson.com
jcozart@gallowayjohnson.com
*Attorneys for Defendant Imperium Insurance Company*

/s/ Kevin M. Lougachi
Kevin M. Lougachi (pro hac vice)
Karbal, Cohen, Economou, Silk & Dunne, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel: 312.431.3700
Fax: 312.431.3670
klougachi@karballaw.com
*Attorneys for Defendant Technology Ins. Co., Inc.*