**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OMEGA DEMOLITION CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  15-cv-5021 |
| | ) |
| TECHNOLOGY INSURANCE COMPANY, INC., and | ) |
| IMPERIUM INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is proposed Intervenor Indiana Compensation Rating Bureau's motion to intervene (R.91) and motion to transfer (R.93). For the reasons set forth below, the Court grants the motion to intervene and denies the motion to transfer.

## BACKGROUND

### I.    Factual Background

Indiana Compensation Rating Bureau ("ICRB") seeks to intervene in this action (the "Illinois Action"), pursuant to Federal Rule of Civil Procedure 24(a)(2), to protect its interests in an assigned-risk worker's compensation policy, Policy No. TARIN59597-00 (the "Policy"). ICRB further seeks to transfer the Illinois Action to the Southern District of Indiana pursuant to Federal Rule of Civil Procedure 1404(a). The following facts are helpful to guide the Court's determination on these two motions.

### A.    The Issuance of the Policy

Indiana law created ICRB.  (R.92-1, Cooper Aff., ¶ 1) (citing Ind. Code § 27-7-2-3).

ICRB serves as Plan Administrator for the Indiana Assigned Risk Reinsurance Pool (the "Pool"),

which, under Indiana law, provides a mechanism for employers which cannot procure worker's

compensation coverage in the voluntary insurance market.  (R.92-1, Cooper Aff., ¶¶ 5-6) (citing

Ind. Code § 27-7-2-28 and 28.1).  ICRB binds Pool insurance coverage and accepts the

applicant's initial insurance deposit from its office in Indiana.  (R.92-1, Cooper Aff., ¶ 9; R.118-

1, Cooper Dep. Tr. at 38:7–39:18).  ICRB then assigns the selected coverage to a Servicing

Carrier, which, in turn, writes the policy.  (R.92-1, Cooper Aff., ¶¶ 37-38; R.118-1, Cooper Dep.

Tr. at 19:7–13, 42:6–20).  By statute, members of ICRB—companies licensed to effect worker's

compensation insurance in Indiana—are reinsurers among themselves for the Pool.  (R.118-1,

Cooper Dep. Tr. at 42:21–43:8; Ind. Code § 27-7-2-29).  A member's risk on a given Pool policy

is limited to the percentage of its voluntary worker's compensation insurance writings in Indiana

for the preceding calendar year.  (R.92-1, Cooper Aff., ¶ 41 (citing Ind. Code § 27-7-2-29);

R.118-1, Cooper Dep. Ex. 3, Pool Quota Share Reinsurance Agreement (the "Reinsurance

Agreement") at Art. I).

In February 2011, Plaintiff Omega Demolition Corporation ("Omega") was hired as a

demolition subcontractor for a construction project on the Milton Madison Bridge, spanning the

Ohio River between Kentucky and Indiana (the "Project").  (R.88, First Am. Compl. ¶ 10).  In

connection with the Project, Omega's insurance broker, Assurance Agency, Ltd. ("Assurance"),

contacted ICRB to secure a Pool policy on Omega's behalf.  (R.92-1, Cooper Aff., ¶¶ 12-13, 23;

R.118-1, Cooper Dep. Tr. at 52:4–54:7).[1]  On or about July 24, 2013, ICRB bound the Policy

coverage in favor of Omega. (R.92-1, Cooper Aff., ¶¶ 14, 16; 92-2, ICRB Coverage Binder

Letter; R.118-1, Cooper Dep. Tr. at 56:23–57:11).  ICRB assigned the Policy to Technology

Insurance Company ("Technology")—a member of ICRB—pursuant to a Pool Servicing Carrier

Agreement (the "Servicing Carrier Agreement").  (R.92-1, Cooper Aff., ¶¶ 36-38; R.118-1,

Cooper Dep. Ex. 4).  On July 31, 2013, Technology sent a letter to Omega on behalf of the Pool,

acknowledging the assignment of the Policy binder.  (R.92-1, Cooper Aff., ¶ 17; R.92-3, Letter

to Omega; R.118-1, Cooper Dep. Tr. at 60:8–15).  Technology later issued the written Policy to

Omega, with an effective date of July 24, 2013.  (R.118-8, Policy No. TARIN59597-00, attached

as Exhibit 6 to the Schneller Aff.).  The Policy was not, however, a voluntary market policy

issued by Technology.  (R.92-1, Cooper Aff. ¶ 38).  The Policy stated that it was a part of the

Worker's Compensation Assigned Risk Plan and provided worker's compensation and

employer's liability insurance in the State of Indiana.  (R.118-8, Policy; R.92-1, Cooper Aff., ¶¶

19-21).

 ICRB's principal place of business is Indianapolis, Indiana.  (R.92-1, Cooper Aff., ¶ 2).

Omega is an Illinois corporation with its principal place of business in Illinois.  (R.88, First Am.

Compl. ¶ 1).  Technology is a New Hampshire corporation with its principal place of business in

New Hampshire.  (R.105, Technology's Am. Counterclaims ¶ 1).

---

[1]  According to Omega's complaint in the Illinois Action, Assurance also procured an insurance
policy on its behalf from Defendant Imperium Insurance Company ("Imperium") and
Imperium's purported agent, Tristar Risk Management (the "Imperium Policy").  (R.88, First
Am. Compl. ¶¶ 11-12).  Imperium is a Delaware corporation with its principal place of business
in Texas.  (R.101, Imperium Answer to First Am. Compl. ¶ 4).

### B. The Workplace Injury and Underlying Lawsuit

On or about July 24, 2013, an Omega employee, James McWorthey ("McWorthey"), suffered an injury while working on the Project. (R.88, First Am. Compl. ¶ 14). As a result, on August 15, 2013, McWorthey filed a lawsuit against Omega, captioned *James McWorthey v. Omega Demolition Corp.*, Cause No. 1422-CC00253 (Circuit Court of the City of St. Louis) (the "Underlying Lawsuit"), seeking relief under the Jones Act. According to Omega's complaint in the Illinois Action, Omega tendered the defense of the Underlying Lawsuit to Technology and Imperium. (*See generally* R.88). In July 2015, McWorthey secured a $35 million judgment against Omega in the Underlying Lawsuit. (*Id.* ¶ 42; R.55, Omega Motion for Substitution of Counsel ¶ 4).

### C. The Related Litigation

### 1. The Present Coverage Action against Technology and Imperium

As a result of the Underlying Lawsuit, on January 26, 2015, Omega filed this action against Technology and Imperium in the United States District Court for the Eastern District of Missouri (R.1), seeking, *inter alia*, a declaration as to coverage under the Policy and the Imperium Policy. On May 21, 2015, Technology moved to transfer the action, arguing that the location of witnesses and documents, among other factors, favored transfer to the Northern District of Illinois. (R.39-40). On June 3, 2015, the parties stipulated to transfer the action. (R.43).

In its Amended Complaint, filed November 10, 2015, Omega seeks a declaration as to Technology that, *inter alia*, the Policy provides coverage for the Underlying Lawsuit and/or Technology is estopped from raising any and all defenses to coverage under the Policy. (R.88, First Am. Compl. ¶ 52; R.118, Omega Br. Opposing Motion to Intervene at 2). In particular,

Omega alleges that Technology defended the Underlying Lawsuit without any reservation of rights for at least eight months, and then abandoned the defense and refused to indemnify Omega after receiving a settlement demand from McWorthey. (R.88, First Am. Compl. ¶¶ 34-42, 45, 48).

In its responsive pleading, filed November 24, 2015, Technology asserts several affirmative defenses to coverage (including policy exclusions, waiver, breach of the duty of cooperation, and unclean hands), along with related counterclaims seeking declaratory relief. (R.105, Technology's Answer and Affirmative Defenses to First Am. Compl., and Am. Counterclaims).

### 2. The Negligent Procurement Actions against Assurance and ICRB

On or about July 10, 2015, Omega filed two lawsuits alleging negligent procurement of the Policy – one against Assurance (Case No. 2015-L-007037, Circuit Court of Cook County, Illinois) (the "Assurance Action"), and the other against ICRB (Cause No. 49D01-1507-CT-022748, Marion County Superior Court, Indiana).[2] With respect to the latter, Omega alleges that ICRB acted negligently by failing to recommend that Omega obtain insurance coverage for Jones Act claims. (R.92-5, Omega Compl. against ICRB ¶ 19). After removing the action to the United States District Court for the Southern District of Indiana (No. 1:15-cv-1293-TWP-TAB) (the "Indiana Action"), ICRB answered and counterclaimed against Omega on September 25, 2015. (*See generally* R.92-6, ICRB Answer, Affirmative Defenses, and Counterclaims). Through its counterclaims, ICRB seeks a judicial declaration that, *inter alia*: (i) McWorthey suffered a workplace injury within the jurisdictional borders of Kentucky; (ii) the Policy does not

---

[2] In its intervention application, ICRB claims that it was not aware of the McWorthey injury or the Underlying Lawsuit, and/or related litigation, until it was served with process on July 16, 2015. (R.92-1, Cooper Aff., ¶ 27).

cover an injury outside of Indiana; (iii) Omega made a voluntary decision not to procure worker's compensation coverage for Kentucky exposures; (iv) the Policy does not cover Jones Act claims; (v) ICRB owed no duty to Omega to recommend a certain type or form of insurance; (vi) ICRB and/or the Servicing Carrier owed no duty to defend or indemnify Omega in connection with the Underlying Lawsuit; and (vii) any defense or indemnity obligation was not triggered until such time as Omega exhausted all primary and non-contributory insurance applicable to the Underlying Lawsuit, such as policies obtained by Project subcontractors McBride River Services, LLC ("McBride) and Advanced Explosive Demolition, Inc. ("AED").

On October 16, 2015, Omega moved to stay the Indiana Action, recognizing that "there are several identical issues pending in both [the Illinois and Indiana actions] that further highlight the need to resolve the coverage issues pending in the [Illinois Action] before litigating [the Indiana Action]." (R.118-3, Omega Br. In Support of Stay Motion, attached as Exhibit 1 to the Schneller Aff., at 5).[3] On November 24, 2015, the Indiana federal court granted ICRB's request to defer any consideration of, or ruling upon, Omega's stay motion pending this Court's consideration of ICRB's intervention and transfer motions. (*See* No. 1:15-cv-1293-TWP-TAB, R.42).

### 3.    The Declaratory Judgment Action by Atlantic Specialty

On June 30, 2015, Atlantic Specialty Insurance Company ("Atlantic Specialty") filed an action against Omega in the Northern District of Illinois (No. 1-15-cv-05802), seeking a declaration that two marine insurance policies issued to McBride—an Omega subcontractor—do not provide coverage for the Underlying Lawsuit ("Atlantic Specialty Action"). On October 27,

---

[3] Omega also moved to stay the Assurance Action on October 16, 2015. (R.118-4, Omega Br. In Support of Stay Motion, attached as Exhibit 2 to the Schneller Aff.). The Illinois state court entered the stay on October 20, 2015. (R.118-5, Order to Special Stay Calendar, attached as Exhibit 3 to the Schneller Aff.).

2015, Omega moved to consolidate the Atlantic Specialty Action and the Illinois Action. (R.75). Technology and Atlantic Specialty opposed this request. (R.86; R.98).

### 4. The Declaratory Judgment Action by Admiral Insurance Company

On or about September 10, 2015, Admiral Insurance Company filed an action against Omega in the District Court of Idaho (No. 1-15-cv-00413), seeking a declaration that a general liability policy issued to AED—another Omega subcontractor—does not provide coverage for the Underlying Lawsuit ("Admiral Action"). On November 11, 2015, Omega moved to dismiss the complaint for lack of personal jurisdiction or, alternatively, to transfer the action to the Northern District of Illinois. (No. 1-15-cv-00413, R.7).

### 5. The Assignment of Interests in the Related Litigation

In July 2015, Omega and McWorthey executed an agreement purporting to assign all Omega's rights, claims, and interests in the aforementioned litigation (the "Related Litigation") to McWorthey (*See* R.55, Omega Motion for Substitution of Counsel ¶¶ 3-5 and exhibits thereto). McWorthey is now the real party in interest with respect to Omega's insurance coverage and indemnity issues arising from the Underlying Lawsuit. (*Id.*).

## II. ICRB's Allegations

ICRB now argues that it is entitled to intervene in the Illinois Action to represent and protect the interests of the Pool against coverage and indemnity claims by Omega and/or McWorthey. (R.92, Br. In Support of Motion to Intervene at 12-13). ICRB claims that it cannot permit Technology, its member, to represent Pool interests due to the potential adversity between Technology and ICRB should the Court determine that coverage exists under the Policy. (*Id.* at 14-15). ICRB further seeks to transfer this action to the Southern District of Indiana, ostensibly to consolidate the Illinois Action with the Indiana Action. (R.94, Br. In Support of Motion to

Transfer at 10-11).  In support of its transfer motion, ICRB argues that the Policy and the Servicing Carrier Agreement require an Indiana court to resolve all coverage issues arising from the Policy.  (*Id.* at 3-6).

## LEGAL STANDARD

ICRB seeks to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2).[4]  Rule 24(a)(2) provides that, "[o]n timely motion," the court must permit intervention where the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed.R.Civ.P. 24(a)(2).  "There are four requirements for intervention of right under [Rule] 24(a) . . . (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties."  *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002) (citing *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984)).  "In evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint."  *Lake Inv'rs Dev. Grp. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983) (citation omitted).[5]  "The burden is on the party seeking to intervene of right to

---

[4]  ICRB moves, in the alternative, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  Because ICRB is entitled to intervene as a matter of right, the Court need not reach the issue of permissive intervention.

[5]  The Court notes that ICRB failed to submit an accompanying "pleading that sets out the claim or defense for which intervention is sought" as required under Federal Rule of Civil Procedure 24(c).  (*See* R.118, Omega Br. Opposing Motion to Intervene at 1).  The Court nonetheless finds that ICRB's motion papers, supporting affidavit, and operative pleading in the Indiana Action set forth sufficient facts and allegations to apprise existing parties of ICRB's proposed claims or

show that all four criteria are met." *Reid L.,* 289 F.3d at 1017 (citations omitted). "[T]he district court must deny intervention" if the intervenor fails to meet any of the four requirements. *Id.* (citations omitted). The district court, however, should not dismiss a motion to intervene "unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Lake Inv'rs. Dev. Grp.*, 715 F.2d at 1258 (citations omitted).

ICRB also seeks to transfer this action to the Southern District of Indiana pursuant to Federal Rule of Civil Procedure 1404(a). Rule 1404(a) provides that a district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought[.]" Fed.R.Civ.P. 1404(a). Rule 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to a 'case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). A 1404(a) transfer is appropriate if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Guignard v. Nat'l R.R. Passenger Corp.*, No. 11 C 124, 2012 WL 1108242, at *1 (N.D. Ill. Apr. 1, 2012) (citation omitted). The movant bears the burden of establishing these three factors. *Id.* "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is

---

defenses concerning the Policy. (*See* R.121, ICRB Reply Br. In Support of Motion to Intervene and Transfer at 5-6) ("identical claims and defenses will be asserted by the ICRB in this forum"). The Court thus finds that existing parties are not prejudiced by ICRB's non-compliance with Federal Rule of Civil Procedure 24(c) at this juncture. *See Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) (recognizing the principle that a court may permit procedurally defective intervention motions if no prejudice results). The Court directs ICRB to file a pleading as intervenor on or before February 10, 2016.

committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

## ANALYSIS

### I.     Motion to Intervene

The Court first turns to ICRB's motion to intervene (R.91).  For the reasons set forth below, the Court grants this motion.

#### A.     Timeliness

ICRB argues that its motion to intervene is timely because:  (1) it only learned of the Underlying Lawsuit and Related Litigation in July 2015; (2) the Illinois Action is in an early stage of litigation; (3) the existing parties, which filed amended pleadings in November 2015, will suffer no prejudice; and (4) ICRB will suffer prejudice if the Court denies intervention. (R.92, Br. In Support of Motion to Intervene at 10-12).  No existing party objects to ICRB's intervention motion as untimely.  On ICRB's showing, the Court deems the motion timely.  *See Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994) (noting that the timeliness determination "is committed to the sound discretion of the district court").

#### B.     Interest Relating to the Subject Matter of the Action

Next, the Court assesses whether ICRB has asserted an interest in the subject matter of the action.  The Seventh Circuit has clarified that the interest must be a "direct, significant legally protectable" one, not a "mere 'betting' interest in the outcome of a case." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) (citations omitted).  This inquiry turns on "the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Id.*

As Plan Administrator for all Pool policies, ICRB has a direct and significant interest in the resolution of coverage issues under the Policy at issue. As described above, Omega and/or Technology have asked the Court to resolve various coverage issues related to the Policy.[6] ICRB, in turn, has claimed that it bound coverage for the Policy and that its members (other than Technology) bear the overwhelming risk (99.96%) with respect to the Policy. (R.92, Br. In Support of Motion to Intervene at 12-13; R.121, Reply Br. In Support of Motion to Intervene at 4, 8-13). To support these claims, ICRB submitted an affidavit of its President and referred to Indiana statutory law and sworn deposition testimony. Accepting these non-conclusory allegations as true, this Court finds that ICRB has demonstrated an interest sufficient to merit intervention in this action.

Omega's chief opposition argument is that ICRB's interest is too contingent to support intervention. (R.118). Specifically, Omega argues that ICRB's true interest in this action—its reinsurance obligations and/or indemnity rights vis-à-vis Technology—is contingent upon a finding of liability against Technology. (*Id.* at 7-10, 12-13). Omega further argues that a potential reinsurer (ICRB) cannot be permitted to intervene to control the defense of its insured (Technology), while reserving the right to deny coverage to the insured. (*Id.* at 12-13) (collecting cases).

ICRB refutes this "contingent interest" characterization. Specifically, ICRB points to an Indiana statute, regulatory filings, and Pool agreements (such as the Servicing Carrier Agreement and the Reinsurance Agreement), all of which purport to demonstrate that the Pool—not

---

[6] The Court recognizes that Omega's estoppel claims in the Illinois Action relate only to Technology (not ICRB), and that Omega's claims against ICRB in the Indiana Action sound in negligence (not declaratory relief). The Court looks to the other coverage claims and counterclaims in this action as implicating ICRB's interests in the Policy and supporting ICRB's intervention motion.

Technology—is responsible for claims made and judgments entered against the Policy. (R.121, Reply Br. In Support of Motion to Intervene at 9-10). The Court further notes that none of Omega's cited authorities denying intervention parallel the factual posture of this case. In particular, while insurers in those cases sought to intervene in an underlying action to assert a coverage claim or defense, the insurance policy, itself, was not the subject matter of the underlying actions. *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 640 (1st Cir. 1989) ("This lawsuit involves the apportionment of tort liability, not the respective rights and obligations of an insured and his insurers under their insurance policy"); *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir. 1984) (insurer not entitled to intervene to propose jury interrogatories to assess insured's liability in product liability and breach of warranty litigation); *Evans Food Products Co. v. Garza B*, No. 83 C 1017, 1985 WL 2285 (N.D. Ill. Aug. 6, 1985) (insurer not entitled to intervene to seek declaration that its policy did not cover insured against antitrust and unfair competition counterclaims); *Sachs v. Reef Aquaria Design Inc.*, No. 06 C 1119, 2007 WL 2973841, at *3 (N.D. Ill. Oct. 5, 2007) (denying intervention where "[insurer's] interest is not directly related to the underlying breach of warranty, breach of contract, and negligence claims in this case"); *Chrysler Corp. v. Haden Uniking Corp.*, 158 F.R.D. 405 (N.D. Ill. 1994) (insurer not entitled to intervene to contest liability of insured against third-party counterclaim in personal injury litigation). Here, by contrast, the Policy is a primary focus of the Illinois Action, and ICRB—on behalf of the Pool— has established a protectable interest in that Policy.

In the end, setting aside that ICRB may have an eventual interest in resolving any reinsurance dispute arising from the Policy among its members,[7] the Court finds that ICRB has stated a direct, significant interest in protecting the Pool in the initial adjudication of Policy-related claims.

## C.    Potential Impairment of ICRB's Interest

ICRB must next establish "at least potential impairment of that interest if the action is resolved without [it]." *Reid L.,* 289 F.3d at 1017 (citations omitted).  "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) (citations omitted).

ICRB argues that this action will "definitively adjudicate ICRB's interests" and that it "will be bound by this Court's interpretation of the Policy" if not permitted to intervene.  (R.92, Br. In Support of Motion to Intervene at 11, 14).  To make this argument, ICRB presumes that Omega will "later argue that the ICRB and the Pool are bound by any coverage ruling, because Technology is the servicing carrier of the ICRB, the Pool's 'agent,' and the Pool, Technology, and the ICRB's interests are coterminous."  (R.121, Reply Br. In Support of Motion to Intervene at 14).  ICRB offers no case law demonstrating that an insurance coverage determination against

---

[7] Given ICRB's representation that it will assert "identical claims and defenses" in the Illinois Action as in the Indiana Action, this Court need not address Omega's argument that any interest in a judicial declaration of reinsurance/reimbursement/indemnity rights between ICRB and Technology is too speculative and contingent to support intervention.  (R.118, Omega Br. Opposing Motion to Intervene at 14-15; R.121, Reply Br. In Support of Motion to Intervene and Transfer at 5-6).  ICRB did not raise any claims related to its reimbursement obligations or indemnity rights in the Indiana Action.  (R.92-6, ICRB Answer, Affirmative Defenses, and Counterclaims in the Indiana Action).

an agent necessarily binds its principal and/or otherwise has a preclusive effect in subsequent proceedings. At this juncture, however, the Court finds that ICRB has demonstrated at least *potential* interest impairment if the Courts resolves various Policy-related claims without its intervention.

### D. Lack of Adequate Representation

Finally, the Court must assess whether any existing party to the litigation adequately represents ICRB's interests. "[T]he Supreme Court in articulating the standard . . . has stated that this 'requirement of the Rule is satisfied if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal.'" *Lake Inv'rs. Dev. Grp.*, 715 F.2d at 1261 (citing *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972)). "[W]here it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists." *Meridian Homes Corp.,* 683 F.2d at 205 (citations omitted). ICRB has met this minimal burden.

As an initial matter, Omega is correct that Technology and ICRB have the same ultimate objective in the Illinois Action—a declaration that coverage does not exist under the Policy. (R.118, Omega Br. Opposing Motion to Intervene at 13). ICRB has demonstrated, however, "potential strategic differences" between itself and Technology, the presence of which supports intervention. *Meridian Homes Corp.,* 683 F.2d at 205. In particular, ICRB points to Omega's theory that Technology created coverage under the Policy through its willful claims practices and bad-faith refusal to settle the Underlying Lawsuit. (R.92, Br. In Support of Motion to Intervene at 14-15; R.121-3, Letter from Omega/McWorthey Counsel). Technology—not the Pool—may be liable for any damages resulting from a finding of coverage on this basis. (R.121, Reply Br.

In Support of Motion to Intervene at 15) (citing the Servicing Carrier Agreement and the Reinsurance Agreement). This case, therefore, is distinguishable from *Meridian Homes*, where prospective intervenors (who had a purely economic interest in an existing party's joint venture profits) offered no evidence of divergent interests between themselves and the existing party in litigation over the joint venture agreement. 683 F.2d at 205. In light of this potential adversity, Technology's representation of Pool interests in this litigation *may* be inadequate. ICRB has thus satisfied the final requirement of Rule 24(a)(2).

Because ICRB meets all four requirements of Rule 24(a)(2), it is entitled to intervene in this action.

## II.    Motion to Transfer

The Court next turns to ICRB's motion to transfer. (R.93). Omega, Imperium, and Atlantic Specialty oppose this request. (R.119; R.111; R.110). For the reasons set forth below, the Court denies this motion.

### A.    Venue

Federal Rule of Civil Procedure 1404(a) gives a district court "the discretion to transfer a case to another proper venue." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1098 (7th Cir. 2008). As movant, ICRB must establish that "venue and jurisdiction are proper in the transferee district." *Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*, No. 03 C 6491, 2004 WL 769358, at *2 (N.D. Ill. Apr. 9, 2004). ICRB fails to meet this initial burden.

The existing parties do not dispute that venue is proper in the Northern District of Illinois. (R.43, Stipulation to Rule 1404(a) Transfer). ICRB, however, "objects to this Court's jurisdiction, and further states that only Indiana courts may properly assert jurisdiction over it." (R.94, Br. In Support of Motion to Transfer at 11 n.3). This position is contrary to Seventh Circuit law. As intervenor, ICRB has consented to jurisdiction. *See Gradel v. Piranha Capital,*

*L.P.*, 495 F.3d 729, 731 (7th Cir. 2007).  ICRB requested permission to intervene "to protect its unique interest in the Policy in this forum," signaling its intent to assert claims and defenses and to move to substitute parties in this forum.  (R.121, Reply Br. In Support of Motion to Intervene and Transfer at 4 n.7, 5-6).  By successfully moving to intervene, ICRB has submitted itself to this Court's jurisdiction.

For purposes of venue, moreover, ICRB is deemed to reside in any district in which it is "subject to the court's personal jurisdiction with respect to the civil action in question[.]"  28 U.S.C. § 1391(c)(2) (2015).  Because it appears that all defendants are residents of Illinois for purposes of the general venue statute, venue is proper here pursuant to § 1391(b)(1).[8]

While venue is proper in the Northern District of Illinois, ICRB has failed to demonstrate that venue is proper in the Southern District of Indiana.  28 U.S.C §1391(b)(2) provides that "a civil action may be brought in a judicial district in which a substantial part of the events or omissions *giving rise to the claim* occurred[.]" (emphasis added).  ICRB considers Indiana the proper venue for all Policy-related claims, pointing to evidence that Assurance contacted it in Indiana for a Pool policy, that it bound coverage and received Policy premiums in Indiana, that the Policy covered worker's compensation exposures in Indiana, and that Indiana law governs the Servicing Carrier Agreement.  (R.94, Br. In Support of Motion to Transfer at 3-6; R.121, Reply Br. In Support of Motion to Intervene and Transfer at 6-7).  ICRB fails to consider, however, the claims and defenses *presently asserted* in the Illinois Action.  Even assuming ICRB's counterclaims and defenses in the Indiana Action—relating to coverage issues under the Policy—have a substantial connection to Indiana, ICRB has made no effort to demonstrate that

---

[8]  The record alternatively reflects that venue is proper under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s]" in this action occurred in Illinois.

the claims in the *present litigation*—the Illinois Action—are properly venued in Indiana.  In particular, ICRB makes no showing that a substantial part of the events giving rise to Omega's primary estoppel claim against Technology occurred in Indiana.  (R.119, Omega Br. Opposing Motion to Transfer at 4-6).  Further, ICRB makes no connection between Imperium and Indiana. (R.111, Imperium Br. Opposing Motion to Transfer at 2-3).[9]  ICRB has therefore failed to meet its burden of establishing that venue and jurisdiction are proper in Indiana.[10]

**B.**  **Convenience of Parties and Witnesses**

In making a convenience determination, courts examine several factors, including the plaintiff's forum choice, the location of material events, the relative ease of access to sources of proof, and the availability of witnesses and parties.  *See Research Automation*, 626 F.3d at 978. The movant "has the burden establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."  *Coffey*, 796 F.2d at 219-20.  Here, too, ICRB fails to make the required showing.

First, ICRB claims that plaintiff's forum choice is a non-factor in the 1404(a) analysis because McWorthey—a Missouri resident—is now the real party in interest and proper plaintiff. (R.94, Br. In Support of Motion to Transfer at 6-7; R.121, Reply Br. In Support of Motion to Intervene and Transfer at 6).  The Court agrees that forum choice is a non-factor, especially

---

[9]  In reply, ICRB recommends that the Court sever Omega's claims related to Imperium and Atlantic Specialty, and transfer only Omega's claims related to Technology.  (R.121, Reply Br. In Support of Motion to Intervene and Transfer at 3 n.6).  Even assuming the authority to do so, the Court does not view such an order as serving the interest of justice under Rule 1404(a).

[10]  Atlantic Specialty—whose declaratory judgment action Omega moved to consolidate with the Illinois Action (R.74)—also disputes whether it is subject to personal jurisdiction in Indiana. (R.110, Atlantic Specialty Br. Opposing Motion to Transfer at 5).

insofar as Omega never "chose" the Northern District of Illinois; rather, the Eastern District of Missouri transferred the action on consent of all parties.

Second, ICRB claims that the "situs of material events" and the "pertinent sources of proof" are in Indiana. (R.94, Br. In Support of Motion to Transfer at 7-8). ICRB cites case law describing these factors in a 1404(a) analysis, but fails to specify what "material events" or "sources of proof" it believes are located in Indiana. ICRB thus fails to identify "particular circumstances" demonstrating that Indiana is "clearly more convenient" than Illinois. *Coffey*, 796 F.2d at 219-20.

Lastly, ICRB claims that the convenience of parties and witnesses favors Indiana. (R.94, Br. In Support of Motion to Transfer at 8-9). This contention, however, is not borne out by the record. Only ICRB is an Indiana organization. Imperium, by contrast, is a Delaware corporation with no alleged connections to Indiana. And while Omega and Technology may have some connection to Indiana, the three existing parties (Omega, Technology, and Imperium) have already demonstrated the convenience of the Northern District of Illinois—and its relevance to the claims at issue—by consenting to transfer in June 2015. "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004).

Similarly, the record does not reflect that relevant witnesses will be located in Indiana. By ICRB's own representation, it has already requested to depose five witnesses in the Indiana Action. (R.92-1, Cooper Aff., ¶ 48). According to Omega's submission, at least four of these witnesses are located in Illinois or Missouri – not Indiana. (R.119, Omega Br. Opposing Motion to Transfer at 7-9). ICRB does not contest Omega's representation. Imperium further represents that witnesses relevant to the Illinois Action are located in Illinois or Wisconsin. (R.111,

Imperium Br. Opposing Motion to Transfer at 4). Again, ICRB does not challenge this assertion. ICRB thus fails to demonstrate that the convenience of parties and witnesses favors transfer to the Southern District of Indiana.

C.    Interest of Justice

In the separate "interest of justice" analysis under Rule 1404(a), courts look to several factors concerning an efficient judicial system, including docket congestion, familiarity with the relevant law, and the relative desirability of resolving controversies in each venue. *See Research Automation*, 626 F.3d at 978. Here, again, ICRB fails to demonstrate that transfer best comports with the interest of justice.

ICRB first argues that transfer would permit consolidation with the Indiana Action and avoid inconsistent rulings on related issues. (R.94, Br. In Support of Motion to Transfer at 10-11, 13-14). It is not clear to the Court, however, that transfer and consolidation will promote judicial efficiency. Omega's primary estoppel claim against Imperium is "factually intertwined" with that against Technology, and neither of those claims has an apparent nexus to Indiana, or to Omega's claims (or to ICRB's counterclaims and defenses) in the Indiana Action. (R.119, Omega Br. Opposing Motion to Transfer at 10 n.6, 11-12). Moreover, the Atlantic Specialty Action is subject to a motion to consolidate within the Northern District of Illinois (R.74), and the Admiral Action (currently pending in the District of Idaho) is subject to a motion to transfer to the Northern District of Illinois (No. 1-15-cv-00413, R.7). The Assurance Action, meanwhile, is currently stayed in Illinois state court. Thus, it is far from apparent that transferring certain claims in the Related Litigation—while the rest remain in Illinois—best serves the interest of justice.

ICRB's last argument supporting transfer is that "Indiana law likely governs every meaningful aspect of this case."  (R.94, Br. In Support of Motion to Transfer at 11-13).  Contrary to ICRB's suggestion, however, the Policy does not appear to contain an express provision providing for Indiana law.  (R.92-1, Cooper Aff., ¶¶ 52-53; R.119, Omega Br. Opposing Motion to Transfer at 12; R.118-8, Policy).[11]  Even if Indiana law does apply to Policy-related claims, moreover, ICRB does not explain how Indiana law likely governs the Illinois Action insofar as the action involves estoppel claims and/or the Imperium Policy.  (R.119, Omega Br. Opposing Motion to Transfer at 12-13; R.111, Imperium Br. Opposing Motion to Transfer at 4-5).  To the contrary, Omega and Imperium reason that Illinois law likely applies in this action.  (*Id.*).  While the Court need not resolve choice-of-law disputes at this time, the potential application of Indiana law is, at best, a neutral consideration in the Court's 1404(a) analysis.[12]  *See, e.g.*, *Midas Int'l Corp. v. Chesley,* No. 11 C 8933, 2012 WL 1357708, at *5 (N.D. Ill. Apr. 19, 2012) (noting that federal courts are capable of applying foreign state law to contract claims).

Because ICRB has failed to consider the claims and defenses presently asserted in the Illinois Action, and has thereby failed to establish "by reference to particular circumstances" that

---

[11]  ICRB identifies such an express provision in the Servicing Carrier Agreement – *not* the Policy.  (R.94, Br. In Support of Motion to Transfer at 5).  But neither Omega nor Imperium is a party to the Servicing Carrier Agreement.  Further, the Servicing Carrier Agreement is not relevant to any claim or defense presently asserted in the Illinois Action.  (*See generally* R.119, Omega Br. Opposing Motion to Transfer at 14).

[12]  The Court is mindful that an Indiana court may have an interest in adjudicating matters involving ICRB and/or the Pool, which were created pursuant to Indiana law.  While this factor weighs in favor of transfer, *see Research Automation*, 626 F.3d at 978,  ICRB fails to demonstrate that the claims and defenses presently asserted in the Illinois Action—and the witnesses, events, and parties thereto—have a substantial connection to Indiana.

Indiana is "clearly more convenient" for existing parties, *Coffey*, 796 F.2d at 219-20, the Court denies ICRB's transfer motion.[13]

## CONCLUSION

For the foregoing reasons, the Court grants ICRB's motion to intervene and denies ICRB's motion to transfer.

**DATED:   January 26, 2016**                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

---

[13]  Because the Court has resolved the transfer motion against ICRB, it need not address ICRB's first-to-file argument.  (R.94, Br. In Support of Motion to Transfer at 14).